**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. _____**

PLUM OWNER FT COLLINS CO. LLC,

      Plaintiff,

v.

WANTMAN GROUP, INC. n/k/a
WGI, INC.,

      Defendant.

**COMPLAINT FOR DECLARATORY JUDGMENT AND MONEY DAMAGES**

      Comes now Plum Owner Ft Collins Co. LLC ("Plum Owner") by and through counsel and would show the Court as follows:

<u>PARTIES, JURISDICTION AND VENUE</u>

      1.     Plum Owner is a limited liability company formed and existing under the laws of the state of Delaware with its place of business at 465 Meeting Street, Suite 500, Charleston, South Carolina 29403. Plum Owner is not a citizen or resident of Florida.

      2.     Defendant, WGI, Inc. ("WGI"), formerly known as Wantman Group, Inc., is a corporation formed and existing under the laws of the state of Florida with its principal place of business at 2035 Vista Parkway, West Palm Beach, Florida 33411.

      3.     This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1322 because WGI is a citizen and resident of the State of Florida, and Plum Owner is not a citizen or resident of the state of Florida, and the amount in controversy exclusive of interest and costs exceeds $75,000. Venue is proper in this judicial district pursuant to U.S.C. § 1391(b) because

WGI resides here.

## SUMMARY OF ACTION

4.      This is an action to recover damages and for other relief against WGI by virtue of its successor liability for the obligations of Texas Via Feliz f/k/a Big Red Dog, Inc. ("BRD").

5.      Plum Owner has initiated an arbitration proceeding before the American Arbitration Association against BRD, BRD's predecessor, MSP Engineering Group, PLLC ("MSP"), Humphreys & Partners Architects, L.P. ("HPA") and others, stemming from design negligence and breach of an engineering services agreement between HPA and MSP, of which Plum Owner is an express third-party beneficiary, which contract then was assumed by BRD, assigned AAA case no. 01-22-004-1334 (the "Underlying Action").  A copy of the Statement of Claim in the Underlying Action without its exhibits is at EXHIBIT 1 and is incorporated herein by reference.  To the extent they are indispensable parties, HPA, MSP, and BRD have not been joined in this action because their agreements require binding arbitration before the American Arbitration Association and because WGI denies being bound by any of those contracts.

6.      The design errors forced Plum Owner to remove all residents from its fully occupied student apartment Project (as hereinafter defined), design extensive repairs to the Project's structural support system and then perform the remedial construction at a cost of more than $6,969,000 and to suffer more than $4,317,000 in economic costs because residents could not occupy the Project during remediation.

7.      Plum Owner will show that under Florida's successor liability law, WGI is liable for the contracts and omissions of BRD because a *de facto* merger occurred pursuant to which BRD merged into WGI in December 2018.

## THE PROJECT AND THE DESIGN DEFECTS

8.      In or about August 2, 2016, Plum Owner engaged HPA to perform architectural and engineering services in connection with the 5-story, wood frame, 234 bed residential apartment building to be located at 2303 W. Plum Street (now known as 2313 W. Plum Street), Fort Collins, Colorado (the "Project") (EXHIBIT 2).  The architectural services contract included within its scope the engineering design of shear wall systems to be designed and built to withstand the winds of Colorado.

9.      HPA hired MSP to do the structural design, including the shear wall design.  The January 6, 2017 Consultant Contract between MSP and HPA is at EXHIBIT 3.

10.      MSP did the shear wall design of the Project and its principal, Gerald Thomas Wynne, sealed and signed structural drawings showing the defective design that were then filed with the Code Compliance Department of Larimer County, Colorado.

11.      The Project was constructed in Fort Collins, Colorado, by Dohn Construction, Inc. in 2017 and 2018.

12.      On October 7, 2020, HPA, after receiving notice from MSP, informed Plum Owner for the first time that there was a "potential engineering issue with the design of the shear walls of the Project . . . [and that MSP] in an abundance of caution, recommended that the Project be evacuated in the event that the forecast wind speeds **exceed 70 mph**."  (EXHIBIT 4)

13.      The October 6, 2020 letter by which MSP notified HPA of design issues is at EXHIBIT 5.

14.      Extensive analyses then were made by the engineering consulting firm of Wiss, Janney, Elstner Associates Inc. ("WJE").  WJE determined that the shear wall structural system

had been badly and dangerously under-designed by MSP.

15. The shear wall system was completely re-designed by WJE to render the Project code-compliant. In August 2021 the Project was vacated of residents and the extraordinary construction project to remediate the structural system was commenced.

16. Recently Plum Owner learned that Wynne, a principal of MSP, was not licensed in Colorado at the time he designed the Project and sealed the structural plans or thereafter. Wynne was ordered by the Colorado State Board of Licensure of Architects and Engineers to cease and desist the unlicensed practice of engineering in Colorado.

17. MSP is liable to Plum Owner for breach of the Consultant Contract, which Contract made Plum Owner an express third-party beneficiary, by an indemnity agreement, and in tort. The damages for which MSP is liable exceed $11,000,000.

<u>ACQUISITIONS OF MSP AND BRD</u>

18. On or about November 15, 2017, BRD acquired MSP. Initially, when this dispute arose, Plum Owner was told that the acquisition of MSP's assets expressly excluded the Project.

19. The true nature of the MSP acquisition does not matter because on May 11, 2022, Plum Owner was able to obtain a copy of the June 21, 2018 Consent Agreement (EXHIBIT 6) in which BRD "assume[d] the obligations along with the rights of MSP under the [Consultant] Contract."

20. By virtue of that agreement, BRD assumed all obligations of MSP in relation to the Project.

21. Upon information and belief, BRD continued to do work on the Project under the Consultant Contract after November 15, 2017, and had some of that work done by Wynne.

22. On December 31, 2018, WGI acquired BRD. WGI has asserted and provided to

Plum Owner very limited and highly redacted documents that purport to show that its acquisition of BRD was an asset purchase. WGI's own public statements and admissions and other publicly available information, however, demonstrate that the transaction was not a classic asset purchase and was instead a merger by which WGI acquired BRD.

## COUNT I

### DECLARATORY JUDGMENT THAT WGI'S ACQUISITION OF BRD WAS A *DE FACTO* MERGER

23.    Plum Owner incorporates herein by reference the allegations of paragraphs 1 through 22.

24.    Pursuant to 28 U.S.C. § 2201, Plum Owner asks the Court to "declare the rights and other legal relations" between WGI and BRD, to wit to declare that WGI's acquisition of BRD was a *de facto* merger and not simply an asset purchase transaction, such that WGI is responsible for the liabilities and obligations of BRD.

25.    For reasons stated herein and in Ex. 1 hereto, HPA, MSP and BRD are liable to Plum Owner for all damages suffered by Owner as a result of the negligent or reckless shear wall design defects in the Project in an amount believed to exceed $11,000,000.

26.    On or about December 31, 2018, WGI acquired the assets and business operations of BRD in what was a *de facto* merger.

27.    The announcement included on the website of WGI states in large bold print "BIG RED DOG to become WGI in 2020, keep leadership." *See* https://wginc.com/big-red-dog-to-become-wgi-in-2020-keep-leadership/ (last accessed September 30, 2022), a copy of which is attached hereto at EXHIBIT 7. The website goes on, "His title may have changed but **Will Schnier,** who many know as founder and CEO of Austin based **Big Red Dog,** isn't going anywhere anytime soon after his 9 year-old firm was acquired by Wantman Group, Inc. [WGI]."

*Id.* (emphasis in original).

28.     In the transaction, the shareholders of BRD received an equity stake in WGI as part of the purchase price.  Mr. Schnier was the Vice President of WGI in charge of Texas operations when he stated, "We [he and the other BRD shareholders] took equity as part of the deal," and that the equity stake they received "shows they aren't planning to jump ship." *Id.*

29.     After the merger, BRD became a division of WGI.  As noted by Mr. Schnier, "[I]n the deal that closed January 1 [2019], Big Red Dog and its 110 employees in Austin, Dallas, Houston, San Antonio and Sugarland **became a division of WGI.**" *Id.* (emphasis added).

30.     Prior to the merger, BRD had published numerous podcast episodes under the label "Big Red Dog Unleashed," which may be found at https://www.youtube.com/channel/UC1Zn7dJLu0sDEbbvipb1yeA (last accessed September 30, 2022). After the merger, the BRD podcasts were relabeled as "WGI Unleashed" and included the WGI logo and the statement that BRD is a "Division of WGI." See examples at: https://podcasts.apple.com/us/podcast/wgi-unleashed/id1352819491; https://www.youtube.com/channel/UC1Zn7dJLu0sDEbbvipb1yeA/videos?view=0&sort=p&shelf_id=0; and https://www.youtube.com/channel/UC1Zn7dJLu0sDEbbvipb1yeA/videos?view=0&sort=p&shelf_id=0 (last accessed September 30, 2022).

31.     Yet other accounts, shared on WGI's website, represent that "[u]nlike so many other offers that [came] across Schnier's desk in the last couple of years, . . . the merger with WGI was a perfect fit. It allows Big Red Dog to expand into Florida and other parts of the country . . . . The acquisition gives both Big Red Dog - the 22nd largest engineering firm in Austin based on 2017 revenue and one of the largest headquartered here - and WGI the

opportunity to expand the range of services it offers to private and public clients." Ex. 7 hereto.

32.     WGI's website goes on, quoting Schnier, "We are going to use our footprint to build a combined firm. Post-acquisition we will be at almost a $100 million in revenue with 60 percent of that coming from public which is a huge deal and a huge objective for us. And from WGI's perspective, they are able to get a significant toehold in the Texas market." *Id.*

33.     Besides growing revenue, Schnier said BRD planned to add 20 to 30 employees in its Austin, Houston and Dallas offices over the course of the year. The company could also expand to Colorado in the "very near future." *Id.*

34.     According to WGI, "Attracting millennial employees is the 'golden goose right now in engineering services' . . . , and the merger will help create more career opportunities for the young employees" *Id.*

35.     WGI's website further indicates, "**Each of the former BIG RED DOG shareholders are now significant shareholders in WGI**, ensuring that our valued Texas clients are represented by Firm owners and leaders. In fact, **no key leaders have departed since the acquisition** was announced . . . ." *See* https://wginc.com/civil-structural-mep-engineering-bigreddog/ (last accessed September 30, 2022) (emphasis added), a copy of which is attached hereto at EXHIBIT 8.

36.     In the podcast episode titled "Introducing WGI Unleashed - Will Schnier, P.E. and Matthew Stewart, P.E," https://bigreddog.libsyn.com/015-will-schnier-pe-and-matthew-stewart-pe (last accessed September 30, 2022), BRD/WGI said that BRD effectively was a division of WGI as a result of the transaction, which they repeatedly referred to as a "merger." They noted that with acquisitions and mergers, sometimes key people from the acquired company leave, but in the BRD/WGI merger, "we retained everyone [from BRD], not only

leadership level but on its corporate level as well."

37.     When WGI attempted to convince one of BRD's public works clients (Eagle Pass Independent School District) to accept an assignment of BRD's contract to WGI, it stated, "[a]s you have likely already heard, WGI is pleased to announce that on January 1, 2019 it acquired the business operations of Texas-based BIG RED DOG, INC. ("BRD"), a firm entrusted as a professional service provider on your projects. **It's not just another merger** or acquisition but rather an opportunity for two great firms to create future opportunities for our clients, associates and the public. . . . As we proceed with our integration plan, it is necessary to assign your existing BRD contract to WGL." *See* EXHIBIT 9 hereto.

38.     In a press release, WGI boasted that BRD's "leadership team . . . and all key principals, executives, and associates, [would] continue in their current roles." *See* https://zweiggroup.com/blogs/news/wgi-acquires-big-red-dog. (last accessed September 30, 2022), a copy of which is attached hereto at EXHIBIT 10.

39.     WGI not only took BRD's shareholders, management and employees, but also took over BRD's offices in at least Austin, Dallas and San Antonio.

40.     Upon information and belief, as part of the merger, and so that it could continue without interrupting the operations of BRD, WGI agreed to assume obligations of BRD such as leases, telephone and internet service, utilities, vehicle rental and employee compensation, to mention a few.

41.     Upon information and belief, after the merger, Big Red Dog, Inc. has effectively ceased working as an engineering firm.

42.     Upon information and belief, as part of the merger, WGI took over the BRD service contracts that would continue to generate new funds following the merger.

43.     Upon information and belief, following the merger, Big Red Dog, Inc. did not seek out any new service contracts or engineering work.

44.     Upon information and belief, following the merger, WGI took possession of and began to use for its own business the furniture, fixtures and equipment previously used by BRD.

45.     WGI did not comply with Florida's statutory requirements of merger that are found, *inter alia*, at Fla. Stat. § 607.1101.  Based on the facts surrounding the transaction and the many admissions published by WGI, the transaction as a matter of law was a ***de facto* merger** of BRD (the merged entity) into WGI (the surviving entity).

46.     As a result of the ***de facto* merger** of BRD into WGI, WGI is liable for the debts and obligations of BRD including the more than $11,000,000 owed by BRD to Plum Owner on the Project.

47.     In accordance with Colorado's Construction Defect Action Reform Act, C.R.S. 13-20-801, et seq. ("CDARA"), Plum Owner on June 21, 2022, gave WGI notice of the breaches of contract and defects in the engineering at the Project.

## COUNT II

### WGI'S LIABILITY FOR BREACH OF CONTRACT BY MSP AND BRD

48.     Plum Owner incorporates herein by reference the allegations of paragraphs 1 through 22.

49.     As set forth herein and in paragraphs 36 through 50 of Ex. 1 hereto, MSP breached its Consultant Contract with HPA and Plum Owner.  As set out in paragraphs 56 through 64 of Ex. 1, BRD assumed the obligations of MSP and also was liable for the breaches of contract that had been committed by MSP.

50.     WGI is liable for the breaches of contract of BRD and MSP because it acquired

BRD by *de facto* merger in December 2018.

51.     As a result of the breaches of contract by MSP and BRD, WGI is liable to Plum Owner in an amount of more than $11,000,000.

COUNT III

WGI'S LIABILITY FOR NEGLIGENCE OF MSP AND BRD

52.     Plum Owner incorporates herein by reference the allegations of paragraphs 1 through 22.

53.     As set out in paragraphs 51 through 55 of Ex. 1, MSP is liable to Plum Owner for negligence. As set out in paragraphs 56 through 64 of Ex. 1, BRD is liable to Plum Owner for the negligence of MSP.

54.     WGI is liable for the negligence of BRD and MSP because it acquired BRD by *de facto* merger in December 2018.

55.     As a result of the negligence of MSP and BRD, WGI is liable to Plum Owner for negligence in an amount of more than $11,000,000.

COUNT IV

REFERRAL TO ARBITRATION

56.     All allegations of paragraphs 1 through 22 are incorporated in this count as if fully recited here.

57.     If the Court finds that a *de facto* merger took place and that WGI is liable for the breaches of contracts and negligence and the obligations of BRD, including the obligation to arbitrate any disputes, then Plum Owner asks that the Court stay this action and allow Plum Owner to join WGI in the Underlying Action that is pending in AAA arbitration, which will determine both liability and damages against MSP, BRD and others.

10

WHEREFORE, PREMISES CONSIDERED, Plum Owner asks the Court to find and rule:

1.      That a speedy hearing be conducted on the declaratory-judgment count;

2.      That WGI's acquisition of BRD was a *de facto* merger;

3.      That WGI as the surviving entity is responsible for the contracts, debts and other obligations of BRD, the merged entity;

4.      That this action be stayed so that Plum Owner can join WGI in the pending arbitration and obtain a final award against all of the parties;

5.      That by virtue of the *de facto* merger, WGI is liable to Plum Owner for the breaches of contract and negligence of MSP/BRD in an amount to be determined in the Underlying Action or at trial but currently expected to exceed $11,000,000;

6.      That WGI is liable for pre-judgment interest on the amounts owed from the dates the funds were expended by Plum Owner or the dates the losses were suffered;

7.      That WGI be ordered to pay the attorney's fees and costs of this action; and

8.      That the Court grant such other and further relief as the Court finds warranted in this case.

Respectfully submitted,

 */s/ Jordan S. Cohen*
Jordan Cohen (FL Bar No. 551872)
jcohen@wickersmith.com
Wicker, Smith, O'Hara, McCoy and Ford, P.A.
515 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353

Richard M. Carter (TN B.P.R. 07285)
*pro hac vice applicant*
Rebecca K. Hinds (TN B.P.R. 31368)
*pro hac vice applicant*
Martin, Tate, Morrow & Marston, P.C.
6410 Poplar Ave, Suite 1000
Memphis, TN 38119
rcarter@martintate.com
rhinds@martintate.com